**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| J Chavez,<br><br>              Plaintiff,<br><br>v.<br><br>Social Security Administration,<br><br>              Defendant. | No. CV-14-02654-PHX-DGC<br><br>**ORDER** |

Plaintiff Juan Francisco Chavez, in a pro se action, seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security which denied him disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. The matter will be remanded for further proceedings.

**I.     Background.**

Plaintiff is a 37 year old male who previously worked in food service and as a janitorial supervisor. A.R. 33. On August 17, 2011, Plaintiff applied for disability insurance benefits and supplemental security income, alleging disability beginning April 15, 2009. *Id.* at 23. On May 13, 2013, he appeared with a non-attorney representative and testified at a hearing before an ALJ. *Id.* at 44-104. A vocational expert also testified. *Id.* On August 6, 2013, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. *Id.* at 23. The Appeals

Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision. *Id.* at 1.

## II. Legal Standard.

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

Harmless error principles apply in the Social Security Act context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. *Id.* The claimant usually bears the burden of showing that an error is harmful. *Id.* at 1111.

## III. The ALJ's Five-Step Evaluation Process.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, and the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant

has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If the claimant cannot perform such work, he is disabled. *Id.*

At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014, and that he had not engaged in substantial gainful activity at any time between the alleged onset date and the date of the decision. A.R. 25. At step two, the ALJ found that Plaintiff had the following severe impairments: episodic diverticulitis,[1] status post colon resection, lumbosacral spondylosis,[2] obesity, and alcohol abuse. *Id.* at 26. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. *Id.* at 28. At step four, the ALJ found that Plaintiff had the residual functional capacity to perform:

---

[1] Diverticulitis is the inflammation of diverticula, which are "small, bulging pouches that can form in the lining of [a person's] digestive system." *See* http://www.mayoclinic.org/diseases-conditions/diverticulitis/basics/definition/con-20033495. The condition "can cause severe abdominal pain, fever, nausea and a marked change in [a person's] bowel habits." *Id.*

[2] Lumbosacral spondylosis may be defined as a "degenerative conditions affecting the disks, vertebral bodies, and/or associated joints of the lumbar spine." Kimberley Middleton & David E. Fish, *Lumbar spondylosis: clinical presentation and treatment approaches*, 2:2 Curr. Rev. Musculoskelet. Med. 94 (Jun. 2009).

> [L]ight work as defined in 20 C.F.R. § 404.1567(b) except that he can never climb ladders, ropes, and scaffolds, but can occasionally climb ramps and stairs.  He can frequently balance, stoop, and kneel, as well as occasionally crouch or crawl.  He should not work around extremely hot environments or in very humid environments.  Further, he should not work around unprotected heights or moving machinery.

*Id.*  The ALJ further found Plaintiff unable to perform any past relevant work.  *Id.*  At step five, the ALJ found that jobs existed in significant numbers in the national economy that the claimant could perform, including housekeeping, cashier, and merchandise marker work.  *Id.* at 34.

**IV.    Analysis.**

Plaintiff argues the ALJ's disability determination was defective for five reasons: the ALJ (1) exhibited bias; (2) discounted the medical opinions of Plaintiff's medical sources; (3) improperly rejected the vocational expert's testimony; (4) improperly discounted the testimony of Plaintiff's family, friends, and former coworkers; and (5) improperly concluded that Plaintiff had a history of alcohol abuse and drug-seeking behavior.  Docs. 23, 25.  The Court will address each argument below.

**A.    Bias.**

"ALJs and other similar quasi-judicial administrative officers are presumed to be unbiased.  This presumption can be rebutted by a showing of conflict of interest or some other specific reason for disqualification."  *Rollins v. Massanari*, 261 F.3d 853, 857-58 (9th Cir. 2001) (quoting *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999)).  "But expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women sometimes display, do not establish bias."  *Valentine v. Comm'r*, 574 F.3d 685, 690 (9th Cir. 2009) (brackets omitted).  In order to demonstrate bias, a claimant must "show that the ALJ's behavior, in the context of the whole case, was so extreme as to display clear inability to render fair judgment."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214-15 (9th Cir. 2005).

Plaintiff contends that the ALJ's questions during the May 13, 2013 hearing demonstrate that she was biased against Plaintiff based on his marital and relationship

status. Doc. 23 at 3. Specifically, he contends that the ALJ seemed "more concerned with [Plaintiff's] background and history than his medical conditions." *Id.* The Court has reviewed the transcript of the hearing (A.R. 44-104) and finds no evidence of bias. The ALJ did ask Plaintiff a number of questions about his background, history, and living situation. *See* A.R. 61-64. But questions of this type serve a legitimate function in a disability hearing by helping the ALJ understand whether Plaintiff's daily activities are consistent with his claim of disability. The ALJ's questions were not improper and do not demonstrate bias.

### B. Weighing of Medical Source Evidence.

Plaintiff argues that the ALJ improperly discounted the medical opinions of Ahmad Qasimyar, M.D. In addition, he asks this Court to consider medical opinions and records from Jugroop Brar, M.D., which he did not present to the ALJ.

#### 1. Legal Standard.

The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability, and need not credit a physician's conclusion that the claimant is "disabled" or "unable to work." 20 C.F.R. § 416.927(d). But the Commissioner generally must defer to a physician's medical opinion, such as statements concerning the nature or severity of the claimant's impairments, what the claimant can do despite the impairments, and the claimant's physical or mental restrictions. § 416.927(a)(2).

In determining how much deference to give a physician's medical opinion, the Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give the greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician. *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating

opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence).

If a treating or examining physician's medical opinion is not contradicted by another doctor, the opinion can be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830. Under this standard, the ALJ may reject a treating or examining physician's opinion if it is "conclusory, brief, and unsupported by the record as a whole[] or by objective medical findings," *Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2004), or if there are significant discrepancies between the physician's opinion and her clinical records. *See Bayliss*, 427 F.3d at 1216.

When a treating or examining physician's opinion is contradicted by another doctor, it can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citation omitted). This standard requires the ALJ to provide "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). Under either standard, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

### 2. Dr. Qasimyar.

Plaintiff has been a patient of Dr. Qasimyar since January 5, 2012. A.R. 1660. On October 4, 2012, Dr. Qasimyar wrote a letter indicating that Plaintiff was suffering from chronic abdominal pain and severe irritable bowel syndrome, and taking pain medication daily to deal with his symptoms. *Id.* On April 8, 2013, Dr. Qasimyar provided a second letter stating that Plaintiff's symptoms "may affect and limit his daily activities, including work." *Id.* at 1714. The letter indicated that Plaintiff suffered from irritable bowel syndrome, diverticulosis, hypogonadism, hypertension, chronic pain syndrome, and depression, and that Plaintiff had been prescribed medication that "may cause psychomotor impairment and affect his ability to drive and function at work." *Id.* The

letter recommended that Plaintiff "remain off work until his medical condition improves." *Id.*

Dr. Qasimyar's opinion is contradicted by another doctor – the reconsideration level State agency medical consultant. A.R 123-43. Therefore, the Court must determine whether the ALJ offered specific and legitimate reasons for rejecting Dr. Qasimyar's opinion – that is, whether the ALJ offered "a detailed and thorough summary of the facts and conflicting clinical evidence." *Cotton*, 799 F.2d at 1408. The ALJ did not satisfy this standard. Her discussion of Dr. Qasimyar's opinion spans a total of four sentences and includes no citations to the record other than citations to the opinion itself. A.R. 32. It certainly does not include a detailed and thorough summary of the facts and conflicting clinical evidence.

The ALJ purported to find Dr. Qasimyar's opinion inconsistent with his own treatment records and the record as a whole, but she did not provide a single specific example of inconsistency. *Id.* The Court's own review of the record reveals that Dr. Qasimyar's opinion letters are consistent with his treatment records. His first letter reported that Plaintiff was suffering from chronic abdominal pain and severe irritable bowel syndrome, and taking pain medication daily to treat his symptoms. A.R. 1660. His treatment records show that he diagnosed and treated Plaintiff for these conditions on nineteen occasions between January 5, 2012 and February 8, 2013.[3] His records also

---

[3] *See* A.R. 1806 (notes for Jan. 5, 2012, reporting abdominal pain and abdominal bloating), 1804 (notes for Jan. 20, 2012, reporting abdominal pain), 1798 (notes for Feb. 9, 2012, reporting abdominal pain), 1796 (notes for Feb. 24, 2012, reporting abdominal tenderness), 1789 (notes for Apr. 12, 2012, reporting nausea and vomiting several times daily, diffuse abdominal pain, bloating, constipation, and diarrhea), 1786 (notes for Apr. 19, 2012, reporting abdominal pain, diarrhea, nausea, and vomiting), 1783 (notes for Apr. 27, 2012, reporting abdominal pain and nausea), 1780 (notes from May 15, 2013, reporting irritable bowel syndrome, acid reflux symptoms, abdominal bloating and nausea), 1771 (notes for July 20, 2012, reporting abdominal pain), 1767 (notes from Aug. 2, 2012, reporting chronic abdominal pain and irritable bowel syndrome and discussing related symptoms), 1764 (notes from Aug. 16, 2012, reporting abdominal pain), 1761 (notes for Aug. 23, 2012, reporting abdominal pain, acid reflux symptoms, constipation, diarrhea, nausea, and vomiting), 1754 (notes for Aug. 31, 2012, reporting abdominal pain, nausea, acid reflux symptoms, and vomiting), 1751 (notes for Sep. 20, 2012, reporting abdominal pain and nausea), 1748 (notes from Oct. 2, 2012, reporting abdominal pain, constipation, and diarrhea), 1745 (notes from Oct. 5, 2012, reporting abdominal pain), 1741 (notes from Oct. 16, 2012, reporting abdominal pain and nausea),

indicate that Plaintiff was taking daily pain medication for his abdominal pain.[4] Dr. Qasimyar's second letter indicated that Plaintiff suffered from irritable bowel syndrome, diverticulosis, hypogonadism, hypertension, chronic pain syndrome, and depression, and that Plaintiff was on prescriptions that "may cause psychomotor impairment and affect his ability to drive and function at work." *Id.* at 1714. Again, this opinion is consistent with the underlying treatment records.[5]

The ALJ also stated that Dr. Qasimyar's opinion was entitled to little weight because it did not include a "function-by-function analysis of the claimant's work related limitations." A.R. 32. This is not a specific and legitimate reason for discounting Dr. Qasimyar's opinion. Whether or not a doctor has provided a function-by-function analysis, the ALJ must consider the doctor's clinical evidence and any work related limitations suggested by that evidence. Although Dr. Qasimyar's clinical records plainly suggest work-related limitations,[6] the ALJ failed to address them.

Finally, the ALJ discounted Dr. Qasimyar's opinion because it was not supported by "objective testing." A.R. 32. This is not a specific and legitimate reason. It is not specific because the ALJ did not identify what testing should have been performed. It is not legitimate because Dr. Qasimyar's opinion is supported by objective evidence. *See*

---

1739 (notes from Nov. 15, 2012, reporting mild diffuse gastrointestinal tenderness and hypoactive bowel sounds), 1733 (notes for Dec. 13, 2012, reporting abdominal pain and acid reflux symptoms), 1726 (notes from Feb. 8, 2013, reporting abdominal pain).

[4] *See, e.g.*, A.R. 1798 (noting that Plaintiff takes Norco (Acetaminophen / Hydrocodone) for chronic abdominal pain).

[5] *See* A.R. 1727 (notes from Feb. 8, 2013, listing Plaintiff's current problems as including irritable bowel syndrome, diverticulosis, hypogonadism, hypertension, and chronic pain), 1783 (notes from Apr. 27, 2012, reporting anxiety and depression), 1727-28 (notes from Feb. 8, 2013, listing Plaintiff's medications, including Norco); *see also* http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0021841/?report=details (Norco's possible side effects include "[e]xtreme dizziness, drowsiness, or weakness").

[6] *See* A.R. 1726 (Plaintiff experiencing "constant" fatigue), 1733 (fatigue during "the majority of the day"), 1741, 1748 (moderate abdominal pain "several times daily," with episodes of variable duration), 1754 (moderate abdominal pain "several times a week"), 1767 (severe abdominal pain that comes on with no apparent trigger, episodes of variable duration), 1771 ("constant" fatigue), 1780, 1786 (diarrhea three-to-four times a day), 1789 (nausea and vomiting several times a day).

*supra* note 3.

The ALJ relied on several factors in concluding that Plaintiff was not disabled. The Commissioner argues that four of these factors support the ALJ's decision to discount Dr. Qasimyar's opinion. Doc. 24 at 7. The Court does not agree.

First, the ALJ noted that Plaintiff stated in March 2010 that he had not had a gastrointestinal flare-up in six years. A.R. 30 (citing A.R. 833). This statement is not inconsistent with Dr. Qasimyar's opinion that Plaintiff suffered from gastrointestinal issues between January 2012 and February 2013.

Second, the ALJ pointed to a treatment note from one of Plaintiff's emergency room visits, which states that Plaintiff was "walking all over the [emergency room] without apparent discomfort." A.R. 30 (citing A.R. 1000). **But t**his treatment note has nothing to do with Dr. Qasimyar or his findings, nor does it support the Commissioner's insinuation that Plaintiff is a malingerer. According to the treatment note, Plaintiff presented to the emergency room with severe abdominal pain and hypoactive bowel sounds, and was given morphine and Zofran. A.R. 1000. Sometime thereafter he was able to walk around the emergency room without discomfort, and reported "some intestinal cramping but not the pain he had when he arrived." *Id.* The Court finds it unremarkable that Plaintiff's pain improved after receiving morphine, and sees nothing in the treatment note to suggest malingering.

Third, the ALJ pointed to treatment notes from Dr. Sanjay Verma indicating that Plaintiff's symptoms improved with use of the drug Amitiza, and noted that Plaintiff did not use it consistently. A.R. 30. As the ALJ mentioned and the medical records suggest, however, Amitiza was not covered by Plaintiff's insurance. *See* A.R. 29, 1685, 1687, 1699. The ALJ does not address the possibility that Plaintiff failed to use the drug consistently because he could not afford it.

Fourth, the ALJ cited a treatment note from Jena Jones, PAC, which concluded that Plaintiff presents "[n]o signs of Inflammatory Bowel disease" and that his symptoms are likely due to "chronic narcotic-induced constipation or adhesions after surgery."

A.R. 31 (citing *id.* at 1708).[7]  Since the disagreement between PAC Jones and Dr. Qasimyar concerns etiology, not symptomatology, it provides no basis for rejecting Dr. Qasimyar's finding that Plaintiff's symptoms "may affect and limit his daily activities, including work." A.R. 1714.

Because the ALJ did not provide specific and legitimate reasons for rejecting Dr. Qasimyar's opinion, the Commissioner's decision must be vacated and the Court must determine the appropriate remedy. Where an ALJ fails to provide adequate reasons for rejecting evidence of a claimant's disability, the Court must credit that evidence as true. *Lester*, 81 F.3d at 834.  An action should be remanded for an immediate award of benefits when the following factors are satisfied: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) the ALJ would be required to find the claimant disabled if the improperly discredited evidence were credited as true. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (internal citations omitted).  There is "flexibility" which allows "courts to remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id.* at 1020.

Even if Dr. Qasimyar's opinion is credited as true, it is unclear from the administrative record whether the ALJ would be required to find Plaintiff disabled. Although Plaintiff's representative did ask about the limiting effect of Plaintiff's gastrointestinal problems during cross-examination of the vocational expert, these questions were not specifically tied to Dr. Qasimyar's opinions and treating records. *See* A.R. 97-104. Thus, the Court is unable to determine from the record whether there is

---

[7] Although Dr. Qasimyar's diagnosis of severe irritable bowel syndrome is contradicted by PAC Jones, it is supported by the findings of Plaintiff's gastroenterologist, Dr. James D. Panetta, A.R. 1647-53, and the opinion of reconsideration level State agency medical consultants, *id.* at 134. To the extent the issue is relevant on remand, the ALJ should consider the findings and opinions of each of these doctors.

some work Plaintiff could perform despite his chronic abdominal pain and gastrointestinal problems. The Court therefore will remand for further proceedings.

### 3. Dr. Brar.

Dr. Brar is a pulmonologist who has provided Plaintiff treatment for sleep apnea. Plaintiff asks the Court to consider opinions and other materials from Dr. Brar, which were presented to the Commissioner for the first time on appeal of the ALJ's decision. *See* Doc. 23 at 18, 25. In addition, Plaintiff asks the Court to consider evidence from Dr. Brar that has never been presented to the Commissioner. *See id.* at 19-23.

The Court does not have jurisdiction to consider this evidence. *See* 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner"). The Court may, however, "order additional evidence to be taken before the Commissioner . . . upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.* The Court finds that Plaintiff's evidence may be material. The Court also finds that there is good cause for Plaintiff's failure to incorporate this evidence into the record because it was produced after the close of the record. Therefore, the Court will order the Commissioner to consider this evidence on remand.

### C. Testimony of Vocational Expert.

Plaintiff contends that the vocational expert found Plaintiff unable to work, and that the ALJ improperly rejected this testimony. Doc. 23 at 4. Plaintiff misapprehends the testimony. The vocational expert did not purport to assess Plaintiff's limitations. Instead, he answered hypothetical questions posed by the ALJ and Plaintiff's attorney about whether a person with specified limitations would be able to find work that exists in significant numbers in the national economy. A.R. 97-100. In response to the hypothetical posed by the ALJ, the vocational expert testified that a person with the specified limitations would be able to find such work. *Id.* at 98. In response to several of the hypotheticals posed by Plaintiff's representative, the vocational expert testified that a

person with the specified limitations would not be able to find work. *Id.* at 100-03. The ALJ concluded that Plaintiff's limitations matched those specified in her hypothetical, not those specified in the hypotheticals posed by Plaintiff's representative. *Compare id.* at 97 (ALJ's hypothetical) *with id.* at 28 (ALJ's determination of Plaintiff's residual functional capacity). Therefore, the ALJ properly considered the testimony of the vocational expert.

### D. Family, Friend, and Coworker Letter.

"Spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, clergy, and employers" are competent to testify regarding "the severity of [the claimant's] impairment(s) and how it affects the [claimant's] ability to function." Social Security Ruling 06-03, 71 Fed. Reg. 45,593, 45,594 (Aug. 9, 2006). If the ALJ wishes to discount this testimony, she must give reasons that are germane to each witness. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

Five individuals provided testimony on Plaintiff's behalf, including his oldest sister (A.R. 297-98), two former coworkers (A.R. 299, 307-09), his ex-wife (A.R. 300-04), and his parents (A.R. 305-06, 310). The ALJ assigned "little weight" to these opinions "because of their conclusory nature and inconsistency with the objective medical evidence of record." A.R. 32. The ALJ also concluded that the letters were likely biased "given [the authors'] close relationships with the claimant." *Id.* Finally, the ALJ stated that, even if she were to accept these opinions as fully credible, she would not be persuaded that Plaintiff is disabled. *Id.*

Upon independent review of the letters, the Court agrees that some of these letters are conclusory in nature, and therefore entitled to little weight. However, two letters provide testimony that is not conclusory and that is consistent with the medical evidence. Plaintiff's father reported that Plaintiff "is always running to the restroom, throwing up, bleeding, in the hospital, or sick in bed" and that "[h]is stomach has kept him from being able to do anything." A.R. 305-06. This statement is generally consistent with Dr. Qasimyar's findings and provides insight into how Plaintiff's conditions affect his ability to function on a day-to-day basis. Plaintiff's former coworker Dana Stanfield testifies

that there were "[m]any times" when Plaintiff became ill at work and had to go to the restroom, and that he often had to leave work early. *Id.* at 307-08. Like the testimony of Plaintiff's father, this testimony is consistent with Dr. Qasimyar's findings and provides insight into how Plaintiff's condition affects his day-to-day functioning.

The fact that these individuals have a close relationship to Plaintiff is not a germane reason for discounting their statements. It will always be the case that a claimant's spouse, parents, siblings, other relatives, friends, neighbors, clergy, and employers will have a close relationship to the claimant. Nonetheless, the Social Security Administration has determined that testimony from these individuals should be considered where it provides insight into "the severity of [the claimant's] impairment(s) and how it affects the [claimant's] ability to function." 71 Fed. Reg. at 45,594. The ALJ is not free to second-guess this determination based on a generalized assumption that familiarity breeds bias. *See generally Nat'l Ass'n of Home Builders v. Norton*, 340 F.3d 835, 852 (9th Cir. 2003) (agency must comply with its own rules). On remand, the ALJ should address the testimony of Plaintiff's father and Ms. Stanfield.

### E. Alcohol Abuse and Drug-Seeking Behavior.

Plaintiff contends that the ALJ erred in finding that he had a history of alcohol abuse and drug-seeking behavior. Doc. 25 at 1-3. The Court does not agree. There is evidence in the record to support these conclusions. *See* A.R. 514 (reporting that Plaintiff drinks 20 beers per week), 1723 (reporting that Plaintiff tested positive for non-prescribed Oxycodone). The Court will not disturb the ALJ's findings on these matters.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **remanded** for further proceedings consistent with this opinion. The Clerk shall enter judgment accordingly and **terminate** this case.

Dated this 21st day of March, 2016.

_____
David G. Campbell
United States District Judge